THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANÍBAL H. NEGRÓN, Defendant and Appellant.

No. 16005.   Argued April 2, 1956.—Decided May 31, 1956.

*Santiago Polanco Abreu* and *Raúl A. Feliciano* for appellant.
*J. B. Fernández Badillo, Acting Attorney General,* and
*Rafael Ydrach Yordán, Fiscal of the Supreme Court,* for
appellee.

PER CURIAM.

In a second Motion for Reconsideration, inspired undoubtedly by his deeply rooted sense of professional responsibility towards his client, the attorney who represents the appellant, based on certain arbitrariness which he discerned in our Per Curiam decision of March 6, 1956, in the analysis of the third error assigned in his brief in support of the present appeal, once more expresses his disagreement with our conclusions. He states with unrestrained vehemence, certainly not very commendable in its form, that this Court "has violated the legislative mandate established in the Code of Criminal Procedure which recognizes to every person accused of an offense in the Superior Court the right to appeal to the Supreme Court"; that this Court, "did not decide or even consider superficially the errors assigned in the brief filed by the defendant, and restated in his Motion for Reconsideration" and that "it thereby deprived the defendant of his right to appeal."

The third assignment of error, elaborated in the Motion for Reconsideration and incorporated by reference in this motion, is untenable. It is true that in the definition of involuntary manslaughter which appears at the beginning of its instructions to the jury, the trial court omitted

the phrase *"which might produce death."* However, that omission did not impair appellant's rights. Taken as a whole, the instructions gave sufficient information to the jury on the point that the lack of due caution or circumspection is only in connection with an act that puts in jeopardy the safety of others and not in connection with any act. Thus, for example, immediately after the definition of involuntary manslaughter of which appellant complains, the trial court addressed the jury as follows:

"The act of causing involuntarily the death of a human being in illegally committing the lawful act of driving an automobile without the due caution and circumspection, constitutes involuntary manslaughter. In involuntary manslaughter the intention to kill is not necessary. The lack of caution or circumspection involves negligence.

.    .    .    .    .    .    .    .

"A person who acts without the due caution or circumspection, may be said to have been negligent, careless, or not diligent in the performance of his duties, and because of that carelessness, that imprudence or negligence, he caused damage to a third person. Carelessness or negligence consists of the failure to observe properly, for the protection of another's interests, that degree of care, prudence and vigilance which the circumstances precisely require and as a consequence of which another person suffers damage.

"When a person is doing something dangerous in itself, or is in charge of some thing or object, the use of which is dangerous and in using that thing, for example driving an automobile, does not take the due precaution that a person of ordinary prudence must take, his action resulting in the death of another, that person's act, because of his negligence, is a criminal act against the dead person, even where his negligence is not equivalent to a reckless or wanton disregard of the safety of others.

"Criminal negligence in the case of involuntary manslaughter must be gross, not common negligence; it must be of such degree as to show no concern for other people's lives and his acts must be such that unless due diligence and care is taken, they shall cause the death of another person."

Subsequently, the judge very carefully charged the jury as follows:

"Pursuant to the Automobile Act, the speed limit in an urban zone is twenty-five miles per hour. This is not so in public highways. In public highways, speed is only limited by the signs posted by the Secretary of the Interior of Puerto Rico as authorized by the Automobile Act. That is to say, as long as there are no signs, there is no speed limit on the public highways. When there are signs, cars may only run at the speed stated therein. The Secretary of the Interior is the person authorized to post that sign. In urban zones the maximum speed limit is only twenty-five miles per hour.

"Now then, even in those highways where there is no speed limit, as well as in those urban zones where the speed limit is only twenty-five miles per hour, the vehicles should run within the maximum required by the special circumstances of time and place where one is travelling.

"Regardless of the absence of signs, in a rural zone, that is, outside the city limit, the maximum speed should be that advised by prudence. And prudence advises that if the road is narrow, not wide, if the flow of traffic and pedestrians is heavy, if the road is in a bad condition, then the speed should conform to those conditions of the road. That is to say, that the maximum speed on a public highway depends on the attendant circumstances at the time the vehicle is being driven. The width of the road, the flow of pedestrians and traffic, the physical conditions of the road, the topography, and even the mechanical condition of the automobile should be taken into account. For example, in a new Cadillac of eight or twelve cylinders, with well-adjusted brakes, with all the lights working, with a complete, perfect and new mechanism, prudence allows, it does not advise, to speed perhaps somewhat more than in a 1914 Ford model, with defective lights and brakes and with worn-out tires. That is to say, the person driving the car should be his own judge as to the speed limit. In urban zones, the maximum speed—if I am mistaken the defense or the prosecuting attorney may correct me—is twenty-five miles per hour, but even if it is so, in towns, before picking up speed, the driver must always take into account the transit, the traffic, the width of the road, its conditions; all the circumstances that I have stated.

"As a matter of fact I shall give you an example to illustrate it. In this case it did not happen in Ponce de León Ave. It happens that at specific hours of the day and under specific circumstances, the law as a general rule, allows a speed of twenty-five miles per hour, yet, there are times when ten miles an hour would be excessive. Still twenty miles an hour in other circumstances would not be considered excessive. For example, during the rush hour in Ponce de León Ave. when the children are leaving school at half past eleven, perhaps fifteen miles per hour is excessive. However, at ten o'clock in the morning, when everybody is working, the automobiles are parked, and the children are in school, then the maximum of twenty-five miles per hour is reasonable, legal, and prudent. That is to say, the speed is determined by the circumstances, the time, the condition of the road, the condition of the automobile, the transit, the traffic, the width, by all those circumstances. It is a matter of common sense, of using one's own judgment. Those are, in general, the instructions that I have to give you as to the offense itself."

In this case, as well as in *People* v. *López*, 77 P.R.R. 573 (1954), the instructions "sufficiently illustrated to the jury the elements of the crime that the People was bound to prove in order that it could deliberate and reach a verdict knowing what it was doing." The omission of the phrase "which might produce death" was cured by the other instructions of the trial court which we previously quoted and which are almost identical with those appearing in the *López* case, *supra*, for it is made clear there that in order for an act to constitute involuntary manslaughter it must be of a hazardous character for human life, that is, it must have the potentialities that are knowable and apparent to cause death. The only error committed by the judge was favorable to the defendant: he instructed the jury to the effect that "criminal negligence in the case of involuntary manslaughter must be gross, not common negligence; it must be of such degree as to show no concern for other people's lives . . ." See *People* v. *López, supra.*

The fourth assignment of error based on the following paragraph of the instructions is also untenable:

"When a person is doing something dangerous in itself or is in charge of some thing or object, the use of which is dangerous and in using that thing, for example driving an automobile, does not take the due precaution that a person of ordinary prudence must take, his action resulting in the death of another, that person's act, because of his negligence, is a criminal act against the dead person, even where his negligence is not equivalent to a reckless or wanton disregard of the safety of others."

It is inaccurate to say that in said paragraph the judge said that "an automobile is an instrument or thing which is dangerous in itself." The use of the words *dangerous in itself* refers to an act ("doing something which is dangerous in itself"). The paragraph quoted from the instructions, unless a clearly distorted meaning is attributed, merely says that the act of driving an automobile may be dangerous if the proper precautions are not taken. Above all, that paragraph cannot be considered isolatedly: in the instructions, the trial court gave detailed information concerning all the circumstances which the jury should have had in mind in order to determine whether a person is driving an automobile negligently or with due caution. Therefore, the conclusion is inescapable that the jury was properly charged that an automobile is a thing or object which may endanger the safety of others depending on the way it is driven, namely, that the act of driving an automobile can be negligent and dangerous if due caution is not observed.

■ Before it finished instructing the jury, the trial court *specifically* asked defense counsel, who was not the same attorney appearing in this motion, whether he wished any special instruction and he answered in the negative. Said attorney did not object either, not even in a general way, to any of the instructions that the trial court had just given to the jury. Since no error was committed impairing the fundamental rights of the defendant, he waived any

other errors in said instructions. *People* v. *Lampón*, 78 P.R.R. 102 (1955); *People* v. *Muñiz*, 73 P.R.R. 298 (1952), and *People* v. *Feliciano*, 70 P.R.R. 834 (1950).

The appellant further alleges that this Court did not decide the question raised in the first and the second assignments of error, to wit: (1) "that the verdict of the jury is contrary to the facts" and (2) "that the verdict of the jury is contrary to law." In our previous *per curiam* decision we made a summary of the evidence which sufficiently established that these errors were not committed. But the appellant insists that the evidence does not warrant a verdict of conviction for involuntary manslaughter. In his opinion, this conclusion is established by the fact that, according to him, none of the witnesses called was qualified to testify *in terms of miles per hour* as to the speed of the car driven by the defendant. However, the car's speed is not the only evidence which justifies the jury's conclusion as to the degree of criminal negligence required by § 203 of the Penal Code and, furthermore, the fact that witness Lopategui testified as to the speed *in terms of miles per hour* has no bearing here. The admissibility of Lopategui's testimony cannot be challenged now. When that witness (upon direct examination) said that the automobile was going at a speed of 35 to 40 miles, counsel for the defense did not object, and later, upon cross examination, Lopategui again testified as to the automobile's speed *in terms of miles per hour*, answering questions *put by the defense*. The evidence, on the other hand, disclosed that the right headlight of defendant's car was out and that the car that Alcaide was pushing was well on the right side, part of it on the sidewalk (that is to say, the part used by pedestrians) at the time of the accident. It also disclosed that there was no other vehicle on the wide road (except that of witness Lopategui) and that Alcaide's automobile had the front and rear lights on. There was also evidence as to the force of the impact, which is evidence enough to warrant a conclusion as to the

speed of the car. The defense introduced no evidence and, on the contrary, submitted the case to the jury on the evidence for the prosecution. It cannot be reasonably argued now that the verdict of the jury is contrary to the facts, and that no evidence was introduced to warrant the jury's conclusion as to the criminal negligence of the defendant based merely on the fact that Lopategui was the only witness who testified *in terms of miles per hour* as to the speed of the automobile.

These are the grounds for denying appellant's first motion for reconsideration. We have set them forth now, not prompted by the imputations made by a member of the Bar in this motion, but as an illustration to that Bar of the analytical process with which this Court—although overburdened with work—studies all the questions raised in a motion for reconsideration which this Court decides with *motion denied*.

The motion for reconsideration will be denied.